| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br><br>Court Address: 1437 Bannock Street, Denver, CO 80202 | DATE FILED: February 12, 2021 10:46 AM<br>FILING ID: 5AD713528559F<br>CASE NUMBER: 2021CV30544 |
| Plaintiffs:<br><br>Donna Roque, and<br>Mary Clifton<br><br>v.<br><br>Thyssenkrupp Elevator Corporation<br>IC US Denver Management LLC,<br>previously Callahan Denver Management LLC;<br>Universal Protection Service, LLC<br>d/b/a Allied Universal Security Services | COURT USE ONLY |
| Raj Chohan #42845<br>The Max Law Firm, LLC<br>8181 Arista Place<br>Broomfield, CO 80021<br>Phone: (720) 699-8268<br>Fax: (720) 699-8269<br>Email: raj@maxinjurylaw.com | Case No.<br><br>Division: |
| **COMPLAINT** | |

Plaintiffs Donna Roque and Mary Clifton, through their attorney, Raj Chohan, of The Max Law Firm, LLC, for their Complaint against the Defendants, state and allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1.  Plaintiff, Donna Roque, is a resident of Colorado.

2.  Plaintiff, Mary Clifton, is a resident of Colorado.

3.  Defendant, Thyssenkrupp Elevator Corporation ("Thyssenkrupp"), is a Delaware corporation, with its principal office at 11605 Haynes Bridge Road, Suite 650, Alpharetta, Georgia, and doing business in the State of Colorado. At all times pertinent, the Defendant operated one or more offices in the Denver metropolitan area that provided elevator repair

Exhibit A

and maintenance services to buildings in Colorado including the building at 410 17th Street, Denver, Colorado, on June 5, 2019. The Defendant is subject to the jurisdiction of this court pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, because the Defendant transacted business and committed the tort that is the subject matter of this lawsuit within this State.

4. Defendant, IC US Denver Management LLC ("IC US Denver"), previously Callahan Denver Management LLC, is a Delaware Limited Liability Company, with its principal office at 10 South Riverside Plaza, Suite 1250, Chicago, IL 60606. At all times pertinent, the Defendant managed the property at 410 17th Street, Denver, Colorado, on June 5, 2019. The Defendant is subject to the jurisdiction of this court pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, because the Defendant transacted business and committed the tort that is the subject matter of this lawsuit within this State.

5. Universal Protection Service, LLC, d/b/a Allied Universal Security Services ("Allied Universal"), is a Delaware Limited Liability Company with a principal office address of 1551 N. Tustin Avenue, #650, Santa Ana, CA 92705, and doing business in Colorado. The Defendant is subject to the jurisdiction of this court pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, because the Defendant transacted business and committed the tort that is the subject matter of this lawsuit within this State.

6. The tortious acts which form the basis of this complaint occurred in the City and County of Denver, Colorado.

7. This court has jurisdiction over the subject matter at issue because this is a civil action for damages. Colo. Const. Art. VI, § 9(1).

8. Venue is proper in Denver County pursuant to C.R.C.P. 98(c).

## GENERAL ALLEGATIONS

9. On or about June 5, 2019, Plaintiffs, Donna Roque and Mary Clifton, entered the building at 410 17th Street, Denver, Colorado, ("the Property") through the Tremont Street entrance, which entrance is open to the public during normal business hours.

10. Plaintiffs had just returned from lunch and were returning to their place of employment. Both Plaintiffs worked on the 23rd floor of the Property.

11. At all relevant times, Plaintiffs were invitees at the Property as contemplated by Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

12. Plaintiffs walked through the lobby to the elevator bank where car No. 9 was located.

13. There was no signage visible in the lobby or near the elevator cars to warn Plaintiffs that car No. 9, or any other elevator car, was either in the process of undergoing maintenance testing, or was about to undergo maintenance testing.

14. There was no signage visible in the lobby or near the elevator cars to prevent Plaintiffs from entering car No. 9.

15. There were no cones, ropes, or other barriers present to warn Plaintiffs that car No. 9, or any other elevator car, was either in the process of undergoing maintenance testing, or was about to undergo maintenance testing.

16. There were no cones, ropes, or other barriers present to prevent Plaintiffs from entering car No. 9.

17. There were no personnel present to warn Plaintiffs that car No. 9, or any other elevator car, was either in the process of undergoing maintenance testing, or was about to undergo maintenance testing.

18. There were no personnel present to prevent Plaintiffs from entering car No. 9.

19. Plaintiffs entered elevator car No. 9 with the intention of going to the 23rd floor.

20. Unbeknownst to Plaintiffs, technicians for Defendant Thyssenkrupp were either in the process of conducting maintenance testing on car No. 9, or were about to conduct maintenance testing on car No. 9.

21. At all relevant times during the subject elevator incident, elevator technicians working on behalf of Defendant Thyssenkrupp were agents or employees of Defendant Thyssenkrupp and were working in the course and scope of their duties.

22. Upon information and belief, elevator technicians employed by Defendant Thyssenkrupp removed the safety barrier screen from elevator car No. 9 immediately prior to Plaintiffs entering the car in the building lobby.

23. Upon information and belief, Defendant Thyssenkrupp has extensive experience conducting maintenance testing on elevator systems such as the one at the subject Property.

24. Upon information and belief, Defendant Thyssenkrupp has provided training and written materials to its agents and employees to prevent incidents in which members of the public unknowingly enter an elevator car during or immediately prior to maintenance testing.

25. Upon information and belief, Defendant Thyssenkrupp is aware that passengers on elevator cars have been seriously injured in circumstances in which elevator technicians have

        conducted maintenance testing without knowing that passengers were trapped in the car that was being tested.

26. Defendant Thyssenkrupp created a dangerous condition on the Property by conducting maintenance and testing on the elevator car in which Plaintiffs were travelling without providing warning signs, barricades, or personnel at the entrance of the elevator to warn and prevent Plaintiffs from entering the subject elevator car.

27. It was foreseeable that without signage, physical barriers, or Thyssenkrupp personnel posted near the elevator cars, that Plaintiffs would enter an elevator car, including car No. 9, immediately before or during maintenance testing.

28. Defendant Thyssenkrupp, through its agents or employees, knew or should have known that it created a dangerous condition on the Property.

29. Defendant Thyssenkrupp, through its agents or employees, owed a duty of care to Plaintiffs to protect them from the dangerous condition Defendant Thyssenkrupp created on the Property.

30. Defendant Thyssenkrupp, through its agents or employees, breached its duty of care to Plaintiffs by failing to warn and prevent them from entering elevator car No. 9 during the period of time that the elevator car was either undergoing maintenance testing or was about to undergo maintenance testing.

31. While Plaintiffs were inside elevator car No. 9, elevator technicians, who were agents or employees of Defendant Thyssenkrupp and acting on behalf of Thyssenkrupp, proceeded to conduct maintenance testing on the elevator car.

32. During the maintenance testing, Plaintiffs were subjected to sudden, violent, unexpected and erratic movements by the elevator car which included sudden starts and stops, acceleration upwards and downwards, rapid drops between floors, bounce maneuvers as though the car was dropping rapidly and hitting a giant spring, and an extended period of time in which the car was moving erratically in near total darkness.

33. Plaintiffs were terrified and feared for their lives during the testing. Both Plaintiffs believed the elevator was out of control and would eventually plunge to the bottom floor, killing them.

34. Plaintiffs estimate they were trapped in the elevator car between 15 and 25 minutes.

35. The testing finally stopped after Plaintiffs were able to call for help using the call button inside the elevator car. Even after contacting someone they believed to be building security, the Plaintiffs' estimate the testing continued for more than 10 minutes thereafter and did not immediately stop.

36. During the elevator incident, Plaintiffs were not able to open the elevator doors or otherwise escape the elevator car. The ordeal ended when Thyssenkrupp's elevator technicians finally stopped the testing and brought the elevator car down to the lobby.

37. At all relevant times, the elevator technicians were working within the course and scope of their employment with Defendant Thyssenkrupp.

38. The elevator incident caused injuries, damages and losses to both Plaintiffs.

39. Defendant Thyssenkrupp, through its agents or employees, breached its duty of care to Plaintiffs.

40. Defendant Thyssenkrupp's breach of its duty of care to Plaintiffs was a proximate cause of their injuries, damages and losses.

41. Upon information and belief, at all relevant times, Defendant Thyssenkrupp, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the elevator system that Plaintiffs were travelling in, and therefore, for purposes of the elevator incident, Defendant Thyssenkrupp was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

42. If Defendant Thyssenkrupp was not a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S., then Thyssenkrupp acted negligently, through its agents and employees, who were acting in the course and scope of their duties when they breached their duty of care to Plaintiffs.

43. Upon information and belief, Defendant Allied Universal was responsible for providing security services to the building at 410 17th Street, Denver, Colorado, on June 5, 2019. Part of Allied Universal's security responsibilities was to make sure members of the public entering the building could safely move through the building, including through use of the building's elevator system.

44. Upon information and belief, Allied Universal, acting through its employees or agents, were aware that elevator maintenance testing was being conducted by Thyssenkrupp technicians, and that elevator cars, including elevator car No. 9, would be taken out of service during this testing.

45. Upon information and belief, Allied Universal, through its agents or employees, knew, or should have known, that Plaintiffs were likely to use the elevator, including elevator car No. 9, to travel to floors within the building during the period of time in which the elevators were undergoing maintenance testing.

46. Upon information and belief, Defendant Allied Universal, through its agents or employees, knew or should have known about the dangerous condition on the property created by Defendant Thyssenkrupp. Allied Universal was responsible for protecting members of the public who were on the premises in the common areas of the Property, and Allied Universal was aware that Defendant Thyssenkrupp was engaged in elevator testing while members of the public had access to the elevator area.

47. It was foreseeable that without signage, physical barriers, or security personnel posted near the elevator cars, Plaintiffs would enter an elevator car, including elevator car No. 9, immediately before or during maintenance testing.

48. Defendant Allied Universal owed a duty of reasonable care to Plaintiffs to warn or prevent them from entering elevator car No. 9 immediately before or during maintenance testing.

49. There were no security personnel present near the elevator cars to prevent Plaintiffs from entering elevator car No. 9.

50. Defendant Allied Universal, through its agents or employees, failed to use reasonable care to warn or prevent Plaintiffs from entering elevator car No. 9 immediately before or during maintenance testing.

51. Defendant Allied Universal, through its agents or employees, breached its duty of care to Plaintiffs.

52. Defendant Allied Universal's breach of its duty of care was a proximate cause of injuries, damages and losses to Plaintiffs.

53. Upon information and belief, at all relevant times, Defendant Allied Universal, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the lobby area leading to the elevator banks. Therefore, Allied Universal was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

54. If Allied Universal was not a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S., then Allied Universal acted negligently, through its agents and employees, who were acting in the course and scope of their duties when they breached their duty of care to Plaintiffs.

55. Defendant IC US Denver was the property manager at the Property during the subject elevator incident.

56. Upon information and belief, Defendant IC US Denver, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the elevator system and the lobby area leading to the elevator

banks. Therefore, IC US Denver was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

57. Upon information and belief, Defendant IC US Denver, through its agents or employees, knew or should have known about the dangerous condition on the Property created by Thyssenkrupp because IC US Denver contracted Thyssenkrupp to do the maintenance work. Defendant IC US Denver was aware that Thyssenkrupp would be taking elevator cars out of service for the purpose of maintenance testing during normal business hours when members of the public would be expected to use the elevator system.

58. Upon information and belief, Defendant IC US Denver, through its agents or employees, coordinated with Thyssenkrupp technicians, and knew what the technicians were doing.

59. Upon information and belief, Defendant IC US Denver, through its agents and employees, had personnel at the Property when the subject elevator incident occurred. Defendant IC US Denver should have recognized the dangerous condition created on the Property when Thyssenkrupp employees tested the subject elevator without making sure there was signage, barriers, or personnel present to prevent Plaintiffs from entering elevator car No. 9.

60. It was foreseeable that without signage, physical barriers, or property management personnel posted near the elevator cars, Plaintiffs would enter an elevator car, including elevator car No. 9, immediately before or during maintenance testing.

61. In addition, Defendant IC US Denver, through its agents or employees, had possession and control of the premises, including the lobby area and elevator areas, and would have known through mere observation of those areas that Thyssenkrupp had created a dangerous condition on the property.

62. Defendant IC US Denver owed Plaintiffs a duty of care to protect them from the dangerous condition created by Thyssenkrupp.

63. Defendant IC US Denver breached its duty of care by failing to ensure that signage, barricades and/or personnel were in place to prevent Plaintiffs from entering elevator car No. 9 during or immediately before maintenance testing on that car.

64. Defendant IC US Denver's breach of its duty of care to Plaintiffs was a proximate cause of injuries, damages and losses to Plaintiffs from the elevator incident.

**FIRST CLAIM FOR RELIEF**
**(Premises Liability of Thyssenkrupp Elevator Corporation as to Plaintiff Donna Roque)**

65. Plaintiff Donna Roque incorporates all foregoing allegations.

66. At all relevant times, Plaintiff was an invitee on the subject Property.

67. Upon information and belief, at all relevant times, Defendant Thyssenkrupp, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the elevator system that Plaintiffs were travelling in.  Therefore, for purposes of the elevator incident, Defendant Thyssenkrupp was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

68. Defendant Thyssenkrupp, through its agents or employees, knew or should have known that it created a dangerous condition on the Property.

69. Defendant Thyssenkrupp, through its agents or employees, owed Plaintiff a duty of care to protect Plaintiff from the dangerous condition on the subject Property.

70. Defendant Thyssenkrupp, through its agents or employees, breached its duty of care to Plaintiff.

71. As a direct, proximate and foreseeable result of Defendant Thyssenkrupp's breach of its duty of care, Plaintiff Donna Roque suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical, hospital and doctor bills, disfigurement and permanent physical impairment, in amounts to be determined at the time of trial.

## SECOND CLAIM FOR RELIEF
**(Premises Liability of Thyssenkrupp Elevator Corporation as to Plaintiff Mary Clifton)**

72. Plaintiff Mary Clifton incorporates all foregoing allegations.

73. At all relevant times, Plaintiff was an invitee on the subject Property.

74. Upon information and belief, at all relevant times, Defendant Thyssenkrupp, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the elevator system that Plaintiffs were travelling in.  Therefore, for purposes of the elevator incident, Defendant Thyssenkrupp was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

75. Defendant Thyssenkrupp, through its agents or employees, knew or should have known that it created a dangerous condition on the Property.

76. Defendant Thyssenkrupp, through its agents or employees, owed Plaintiff a duty of care to protect Plaintiff from the dangerous condition on the subject Property.

77. Defendant Thyssenkrupp, through its agents or employees, breached its duty of care to Plaintiff.

78. As a direct, proximate and foreseeable result of Defendant Thyssenkrupp's breach of its duty of care, Plaintiff Mary Clifton suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical and doctor bills, PTSD and exacerbation of anxiety, and permanent physical/mental impairment, in amounts to be determined at the time of trial.

### THIRD CLAIM FOR RELIEF
**(Negligence of Thyssenkrupp Elevator Corporation as to Plaintiff Donna Roque)**

79. Plaintiff incorporates all foregoing allegations.

80. Defendant Thyssenkrupp, through its agents or employees, knew or should have known that it created a dangerous condition on the Property.

81. Defendant Thyssenkrupp, through its agents or employees, owed Plaintiff a duty of reasonable care to avoid creating a dangerous condition on the Property.

82. Defendant Thyssenkrupp, through its agents or employees, owed Plaintiff a duty of reasonable care to protect Plaintiff from the dangerous condition on the subject Property.

83. Defendant Thyssenkrupp, through its agents or employees, breached its duty of care to Plaintiff.

84. As a direct, proximate and foreseeable result of Defendant Thyssenkrupp's breach of its duty of care, Plaintiff Donna Roque suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical, hospital and doctor bills, disfigurement and permanent physical impairment, in amounts to be determined at the time of trial.

### FOURTH CLAIM FOR RELIEF
**(Negligence of Thyssenkrupp Elevator Corporation as to Plaintiff Mary Clifton)**

85. Plaintiff incorporates all foregoing allegations.

86. Defendant Thyssenkrupp, through its agents or employees, knew or should have known that it created a dangerous condition on the Property.

87. Defendant Thyssenkrupp, through its agents or employees, owed Plaintiff a duty of reasonable care to avoid creating a dangerous condition on the Property.

88. Defendant Thyssenkrupp, through its agents or employees, owed Plaintiff a duty of reasonable care to protect Plaintiff from the dangerous condition on the subject Property.

89. Defendant Thyssenkrupp, through its agents or employees, breached its duty of care to Plaintiff.

90. As a direct, proximate and foreseeable result of Defendant Thyssenkrupp's breach of its duty of care, Plaintiff Mary Clifton suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical and doctor bills, PTSD and exacerbation of anxiety, and permanent physical/mental impairment, in amounts to be determined at the time of trial.

## FIFTH CLAIM FOR RELIEF
### (Premises Liability of Allied Universal as to Plaintiff Donna Roque)

91. Plaintiff Donna Roque incorporates all foregoing allegations.

92. At all relevant times, Plaintiff was an invitee on the subject Property.

93. Upon information and belief, at all relevant times, Defendant Allied Universal, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the lobby area leading to the elevator banks.  Therefore, Allied Universal was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

94. Defendant Allied Universal, through its agents or employees, knew or should have known of the dangerous condition on the Property.

95. Defendant Allied Universal, through its agents or employees, owed Plaintiff a duty of care to protect Plaintiff from the dangerous condition on the subject Property.

96. Defendant Allied Universal, through its agents or employees, breached its duty of care to Plaintiff.

97. As a direct, proximate and foreseeable result of Defendant Allied Universal's breach of its duty of care, Plaintiff Donna Roque suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical, hospital and doctor bills, disfigurement and permanent physical impairment, in amounts to be determined at the time of trial.

## SIXTH CLAIM FOR RELIEF
### (Premises Liability of Allied Universal as to Plaintiff Mary Clifton)

98. Plaintiff Mary Clifton incorporates all foregoing allegations.

99. At all relevant times, Plaintiff was an invitee on the subject Property.

100. Upon information and belief, at all relevant times, Defendant Allied Universal, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the lobby area leading to the elevator banks. Therefore, Allied Universal was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

101. Defendant Allied Universal, through its agents or employees, knew or should have known of the dangerous condition on the Property.

102. Defendant Allied Universal, through its agents or employees, owed Plaintiff a duty of care to protect Plaintiff from the dangerous condition on the subject Property.

103. Defendant Allied Universal, through its agents or employees, breached its duty of care to Plaintiff.

104. As a direct, proximate and foreseeable result of Defendant Allied Universal's breach of its duty of care, Plaintiff Mary Clifton suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical and doctor bills, PTSD and exacerbation of anxiety, and permanent physical/mental impairment, in amounts to be determined at the time of trial.

**SEVENTH CLAIM FOR RELIEF**
**(Negligence of Allied Universal as to Plaintiff Donna Roque)**

105. Plaintiff incorporates all foregoing allegations.

106. Defendant Allied Universal, through its agents or employees, knew or should have known of the dangerous condition on the Property.

107. Defendant Allied Universal, through its agents or employees, owed Plaintiff a duty of reasonable care to protect Plaintiff from the dangerous condition on the subject Property.

108. Defendant Allied Universal, through its agents or employees, breached its duty of care to Plaintiff.

109. As a direct, proximate and foreseeable result of Defendant Allied Universal's breach of its duty of care, Plaintiff Donna Roque suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical, hospital and doctor bills, disfigurement and permanent physical impairment, in amounts to be determined at the time of trial.

**EIGHTH CLAIM FOR RELIEF**
**(Negligence of Allied Universal as to Plaintiff Mary Clifton)**

110.   Plaintiff incorporates all foregoing allegations.

111.   Defendant Allied Universal, through its agents or employees, knew or should have known of the dangerous condition on the Property.

112.   Defendant Allied Universal, through its agents or employees, owed Plaintiff a duty of reasonable care to protect Plaintiff from the dangerous condition on the subject Property.

113.   Defendant Allied Universal, through its agents or employees, breached its duty of care to Plaintiff.

114.   As a direct, proximate and foreseeable result of Defendant Allied Universal's breach of its duty of care, Plaintiff Mary Clifton suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical and doctor bills, PTSD and exacerbation of anxiety, and permanent physical/mental impairment, in amounts to be determined at the time of trial.

**NINTH CLAIM FOR RELIEF**
**(Premises Liability of IC US Denver Management LLC as to Plaintiff Donna Roque)**

115.   Plaintiff Donna Roque incorporates all foregoing allegations.

116.   At all relevant times, Plaintiff was an invitee on the subject Property.

117.   Upon information and belief, at all relevant times, Defendant IC US Denver, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the lobby area leading to the elevator banks, the elevator system, and the Property.  Therefore, IC US Denver was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

118.   Defendant IC US Denver, through its agents or employees, knew or should have known of the dangerous condition on the Property.

119.   Defendant IC US Denver, through its agents or employees, owed Plaintiff a duty of care to protect Plaintiff from the dangerous condition on the subject Property.

120.   Defendant IC US Denver, through its agents or employees, breached its duty of care to Plaintiffs.

121. As a direct, proximate and foreseeable result of Defendant IC US Denver's breach of its duty of care, Plaintiff Donna Roque suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical, hospital and doctor bills, disfigurement and permanent physical impairment, in amounts to be determined at the time of trial.

### TENTH CLAIM FOR RELIEF
### (Premises Liability of IC US Denver Management LLC as to Plaintiff Mary Clifton)

122. Plaintiff Mary Clifton incorporates all foregoing allegations.
123. At all relevant times, Plaintiff was an invitee on the subject Property.

124. Upon information and belief, at all relevant times, Defendant IC US Denver, through its agents or employees, possessed or controlled the portion of the Property, in whole or in part, in which the elevator incident occurred, namely – the lobby area leading to the elevator banks, the elevator system, and the Property. Therefore, IC US Denver was a statutory landowner under Colorado's Premises Liability Act as defined at Section 13-21-115, C.R.S.

125. Defendant IC US Denver, through its agents or employees, knew or should have known of the dangerous condition on the Property.

126. Defendant IC US Denver, through its agents or employees, owed Plaintiff a duty of care to protect Plaintiff from the dangerous condition on the subject Property.

127. Defendant IC US Denver, through its agents or employees, breached its duty of care to Plaintiff.

128. As a direct, proximate and foreseeable result of Defendant IC US Denver's breach of its duty of care, Plaintiff Mary Clifton suffered physical injuries, past and future economic and noneconomic damages, including physical pain and suffering, inconvenience, loss of enjoyment of life, mental anguish, medical and doctor bills, PTSD and exacerbation of anxiety, and permanent physical/mental impairment, in amounts to be determined at the time of trial.

### JURY DEMAND

Plaintiff s demand a jury on all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court enter judgment against Defendants and in their favor for actual damages in an amount to be determined at the time of trial, pre-

judgment interest, post judgment interest, costs, expert witness fees, and for such other and further relief as this Court deems proper.

Respectfully submitted February 12, 2021,

                                      THE MAX LAW FIRM, LLC

                                      By: /s/ *Raj Chohan*
                                      Raj Chohan, #42845
                                      Attorney for Plaintiffs

Plaintiffs' Addresses:

Donna Roque
2485 E. 123rd Way
Thornton, CO 80241

Mary Clifton
7013 S. Costilla Street
Littleton, CO 80120